**Richard Lee ABERNATHY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1185S465.

Supreme Court of Indiana.

June 9, 1988.

Theodore F. Smith, Jr., Smith & Farrell, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Richard Lee Abernathy was tried before a jury and convicted of rape, Ind.Code § 35–42–4–1(a)(1) (Burns 1987 Repl.), criminal deviate conduct, Ind.Code § 35–42–4–2(1) (Burns 1987 Repl.), and two counts of child molesting, Ind.Code § 35–42–4–3(c) (Burns 1987 Repl.). All of the convictions were class A felonies, and the trial court sentenced Abernathy to concurrent terms of thirty-five years on each count.

Although Abernathy asserts several grounds for reversal in this direct appeal, we address a single issue: whether the judge's intervention and comments during the trial deprived appellant of a fair trial.

Abernathy's convictions stemmed from a series of encounters with his step-daughter, S.H., beginning at about age fourteen and lasting until about age twenty. S.H. testified that Abernathy began touching and fondling her when she was fourteen and forced her to submit to sexual intercourse shortly after her fifteenth birthday. Eventually, Abernathy forced her to participate in other acts, including oral sex. S.H. complied with Abernathy's demands because he struck her and threatened to kill her and her family. Though S.H. left her step-father's home on two occasions, she returned because of his threats.

Abernathy admitted engaging in sexual activity with S.H., but asserted it did not begin until she was sixteen. When the sexual relationship developed, Abernathy alleges, S.H. was a voluntary participant and no force or threats were used.

■ Abernathy alleges that the trial judge abandoned his position of impartiality by intervening with comments and questions throughout the proceedings. The trial court has the duty to remain impartial and refrain from making unnecessary comments or remarks. *Cornett v. State* (1983), Ind., 450 N.E.2d 498. A fair trial before an impartial judge is an essential element of due process. *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611. The judge may question witnesses if done in a manner that will not improperly influence the jury; this power should be exercised to aid the finder of fact. *Thomas v. State* (1967), 249 Ind. 271, 230 N.E.2d 303.

■ Appraising the weight and value of testimony is the jury's province. A trial judge should refrain from imposing his opinions on the jury so that it may fairly assess the evidence and return a verdict accordingly. *Brannum v. State* (1977), 267 Ind. 51, 366 N.E.2d 1180. It is improper for the judge to ask questions which are calculated to impeach or discredit the witness. As Justice Hunter wrote for this Court, the jurors' customary respect for the judge "can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality." *Kennedy*, 258 Ind. at 226, 280 N.E.2d at 620–21.

Abernathy points to comments and questions which allegedly indicated the judge's opinion on the credibility of B.A., a witness favorable to the defense. B.A., appellant's wife and the victim's mother, testified during the State's case in chief. Her testimony was generally unresponsive to the prosecutor's questions. B.A.'s answers tended to be expansive explanations of the events as she saw them. The judge cautioned her about her unresponsive answers.

Occasionally the judge's comments went beyond admonishment. When the State questioned her about an admission her husband made to her, the following exchange took place:

Q. Had your husband not ever admitted to you that he had been doing that?

A. No, rape, sir, no, sir.

JUDGE: Well, what would you call it, Ma'am?

The State pointed out that she had admitted in an earlier statement that Abernathy had confessed to B.A. and the family minister that he had sexual intercourse with S.H. While she was attempting to explain

the apparent inconsistency in her testimony, the following colloquy occurred:

A. I'm not denying that I said them but I was in a state of mind, I do not remember saying them and they certainly aren't true. That is what I'm saying.

JUDGE: You're telling the jury that you made a tape recorded statement but the things you said weren't true, is that what you're telling the jury?

A. I was in a condition, I didn't realize what I was saying or doing. ... I don't remember everything.

JUDGE: Ma'am, don't you go to church?

A. I go to church.

JUDGE: You're not in the habit of telling things that aren't true, are you?

A. That's true but I am saying that I was in such a state of mind that I do not know what I said.

JUDGE: All right, go ahead.

Later on cross-examination, defense counsel attempted to rehabilitate the witness regarding her earlier statement that Abernathy was capable of violence:

Q: Has he ever physically tried to hit you and injure you?

A: No.

JUDGE: Why did you answer the question that way then?

A: Beg your pardon?

JUDGE: Why did you give officer Hanna that kind of answer?

A: I just had such hate for him, Your Honor, that I was out to get him, that is all the explanation I can give.

JUDGE: You were making it all up, is that what you're saying?

On redirect, the State returned to B.A.'s earlier statement that Abernathy had confessed to sexual intercourse with the victim:

Q: But you knew about it and you allowed it to continue, didn't you?

A: I knew about it?

Q: That is [sic] was going on, Mr. Abernathy, you said, admitted it to you.

A: Not what he is charged with, Your Honor, er Mr. Prosecutor.

JUDGE: What did he admit to, then?

A: That they had had sex.

JUDGE: Who?

A: (no answer)

JUDGE: Who had sex?

A: My husband and my daughter.

\* \* \* \* \* \*

Q: You concluded that [the victim] lied?

A: I know that they are lies, yes.

Q: Okay, have you also concluded that he lied?

JUDGE: Why did Richard lie then, why did Mr. Abernathy lie?

A: He didn't lie about that.

JUDGE: He didn't lie about that. Go ahead, Mr. Nave.

MR. NAVE: I'm finished, Your Honor.

Defense counsel did not object to these instances. Later, outside the presence of the jury, counsel objected to the judge's behavior during B.A.'s testimony, pointing out that the judge had turned his chair so that he sat with his back to the witness and placed his feet on the wall in what defense counsel interpreted as an attitude of disbelief or disinterest. Counsel noted that several jurors snickered at the judge's actions. The judge apologized, saying he "certainly ... meant no disrespect to [B.A.] or any other witness." No admonishment was requested or given.

The judge again intervened in the testimony of State's witness T.H., the victim's sister. When the State had completed its direct examination, the judge posed the following questions:

JUDGE: I've got one question. Now when you discussed what [the victim] had told you you used the word rape and rape has certain legal requirements that are really not important for right now. But is there any doubt in your mind what [the victim] was talking about?

A: No. I knew that she ...

JUDGE: She was talking about sexual intercourse between herself and Mr. Abernathy.

A: Dick had forced her.

JUDGE: And that he forced her.

A: Yes.

JUDGE: Are you sure about that?

A: Yes, I have no doubt in my mind, yes.

Following the testimony of this witness and outside the presence of the jury, defense counsel moved for a mistrial, arguing that the judge's acts had prejudiced the jury. Counsel cited the judge's questioning of B.A. and his attitude of disbelief. The court denied the motion, again disavowing any intention to indicate his disrespect for any witness.

 The State argues that Abernathy waived any error in many of these instances because he failed to object at the moment of the judge's questioning. Abernathy did object on one occasion and incorporated many of the alleged errors in his motion for mistrial. We recognize that an attorney may be reluctant to object to the judge's actions in the presence of the jury, fearing that an apparent conflict with the judge would cause more damage. In such a case, we have treated the alleged error on the merits. *See Kennedy*, 258 Ind. at 218, 280 N.E.2d at 615. Here, Abernathy made appropriate objections outside the jury's presence to preserve his allegation of error.

■ The trial judge did not maintain adequately his position of neutrality in this case. Though many of the judge's comments were directed to the control of the proceedings, the questions outlined above clearly impeached or discredited the witness. The questions did not clarify facts for the jury; they indicated the judge's opinion of the witness' credibility. The jury must be allowed to form its own opinion on the credibility of the witnesses free of any influence by the judge's beliefs or opinions.

Abernathy's defense hinged on the distinction between consensual intercourse and forcible rape. The testimony of B.A. and that of T.H. was directed to this issue. By suggesting he disbelieved the witnesses, the judge necessarily indicated his disbelief of Abernathy's defense. His opinion of any exculpatory evidence was readily apparent to the jury. Because of the deference which juries accord the judge's opin-

ions, this lack of neutrality was detrimental to Abernathy's defense.

Abernathy has the right to be tried in an impartial atmosphere, one in which both judge and jury presume his innocence until deliberations begin.

Judgment reversed and cause remanded for a new trial.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.