ATTORNEY FOR HON.
WILLIAM E. YOUNG, JUDGE

Kevin P. McGoff
Indianapolis, Indiana

ATTORNEY FOR THE COMMISSION
ON JUDICIAL QUALIFICATIONS

Adrienne L. Meiring
Indianapolis, Indiana

**FILED**

Feb 14 2011, 3:52 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S00-1007-JD-374

IN THE MATTER OF THE HONORABLE
WILLIAM E. YOUNG, JUDGE
OF THE MARION SUPERIOR COURT

JUDICIAL DISCIPLINARY ACTION

**February 14, 2011**

**Per Curiam.**

This matter comes before the Court as a result of a judicial disciplinary action brought by the Indiana Commission on Judicial Qualifications ("Commission") against the Respondent herein, William E. Young, Judge of the Marion Superior Court. Article 7, Section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Indiana Supreme Court original jurisdiction over this matter.

Subsequent to the filing of formal charges by the Commission, the Respondent and the Commission jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" (hereinafter "Conditional Agreement") in which they stipulated to certain facts that will be recounted below. We accepted the parties' Conditional Agreement by order on November 23, 2010.

## Stipulated Facts and Violations

### *Hollinsworth* Case

On February 4, 2009, a bench trial was scheduled in Respondent's court for defendant Christian Hollinsworth, who was charged with driving with a suspended license (a Class A misdemeanor, *see* Ind. Code § 9-24-19-2 (West 2004)), and for speeding (an infraction, *see* Ind. Code § 9-21-5-13 (West Supp. 2009)). Hollinsworth's attorney initially requested a brief delay in the start of the trial so Hollinsworth could sign a plea agreement offered by the prosecutor. When Hollinsworth did not sign the plea agreement, her attorney sought a continuance of the trial, which Respondent denied.

At the start of the State's examination of its first witness, Hollinsworth's attorney informed Respondent that Hollinsworth wished to accept the State's plea offer. Respondent declared, "It's too late. If I find her guilty, she's going to jail for a year." Hollinsworth tried to explain to Respondent that her attorney previously had misunderstood her, that she had told him she wished to accept the plea agreement if the court would not grant a continuance and that she did not want to go to trial. Respondent responded, "I don't know if I want to take your plea. I'd rather just go to trial, I think. I don't like being jerked around at all, all right?" Hollinsworth continued her attempts to explain, but Respondent informed her, "I'm not taking a plea," and instructed the prosecutor to continue examination of the State's first witness.

At the conclusion of the trial, Respondent found Hollinsworth guilty of driving with a suspended license, entered a true finding on the speeding charge, and sentenced Hollinsworth to the maximum period of incarceration (365 days) and suspended her driving license for a year. During the sentencing hearing, Respondent made reference to two criminal cases pending against Hollinsworth in another court. When her attorney pointed out, "Those are only alleged charges," Respondent responded, "Sure they are."

Five days later, on February 9, 2009, Hollinsworth filed a motion with the court seeking sentence modification, which Respondent denied on February 11, 2009. On February 13, 2009, Hollinsworth filed a second motion for sentence modification, this time joined by the State.

Respondent granted this joint motion, modifying Hollinsworth's sentence to 22 days executed with the remaining 343 days suspended. The license suspension remained unchanged.

Thereafter, Hollinsworth appealed. On June 3, 2010, this Court granted Hollinsworth's petition to transfer, reversed the trial court's decision, and remanded the matter for a new trial due to Respondent's behavior. *See* Hollinsworth v. State, 928 N.E.2d 201 (Ind. 2010) (per curiam). Concerning Respondent's behavior on February 4, 2009, we noted:

> Indiana Judicial Conduct Canon 2 requires a judge to "perform the duties of judicial office impartially, competently, and diligently." Judges must be "objective and open-minded." Rule 2.2, comment 1. "A judge shall perform the duties of judicial office . . . without bias or prejudice." Rule 2.3(A). "A judge shall be patient, dignified, and courteous to litigants." Rule 2.8(B). A judge shall disqualify himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned" including in circumstances when "the judge has a personal bias or prejudicial concerning a party." Rule 2.11(A).
>
> The trial court's behavior in this case did not meet these standards.

Id. at 202.

We find, and the parties agree, that Respondent's statements and conduct during the Hollinsworth proceedings violated the portions of Judicial Conduct Canon 2 noted in our Hollinsworth opinion; violated Rule 1.2 of the Code of Judicial Conduct, which requires a judge to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and [to] avoid impropriety and the appearance of impropriety," Ind. Judicial Conduct Rule 1.2 (West 2009) (asterisks deleted); and were prejudicial to the administration of justice.

*Other Traffic Infraction Cases*

In 2009, the penalty range for a Class C traffic infraction was $0 to $500, Ind. Code § 34-28-5-4(c) (West Supp. 2009), and court costs were an additional $149.50. Throughout 2009, Respondent engaged in a practice of imposing substantially higher penalties of $300 to $400 in fines, plus court costs, against traffic-infraction litigants who exercised their right to trial and lost, as compared to those who pleaded guilty and waived their right to trial. Indeed, in one instance, when a traffic-infraction defendant came before the bench and was trying to decide

3

whether to admit or deny her infraction, Respondent stated, "I'm a great listener but sometimes I'm very expensive."

Respondent admits he engaged in this practice in part because he believed the litigants on whom he imposed the higher fines should not have pursued trials, and in part because he wanted to discourage other litigants from exercising their constitutional rights to trials.

We find, and the parties agree, that by employing a practice of imposing increased penalties against traffic-infraction litigants for exercising their trial rights so as to penalize them for doing so and to discourage others from doing so, Respondent violated Code of Judicial Conduct Rule 1.2, discussed above; Rule 1.1, which requires a judge to "comply with the law, including the Code of Judicial Conduct," Jud. Cond. R. 1.1 (asterisk deleted); and Rule 2.2, which requires a judge to "uphold and apply the law" and "perform all duties of judicial office fairly and impartially," Jud. Cond. R. 2.2 (asterisk deleted); *see also* id. at cmt. 1 ("To ensure impartiality and fairness to all parties, a judge must be objective and open-minded."); and that his conduct was prejudicial to the administration of justice. We also find that Respondent's conduct in this regard violated Rule 2.6, which states that "[a] judge shall accord to every person who has a legal interest in a proceeding . . . the right to be heard according to law," Jud. Cond. R. 2.6(A), and that "[a] judge . . . shall not act in a manner that coerces any party into settlement," Jud. Cond. R. 2.6(B).

Respondent also admits that throughout 2009, he routinely failed to consider the specific circumstances of the cases before him, although relevant case-specific information, such as the defendants' driving records, was available to him when he assessed penalties against defendants. Instead, the majority of traffic-infraction defendants who lost at trial received fines of $300 or more plus court costs, regardless of their particular situations. Respondent acknowledges that he should have given appropriate consideration to each defendant's specific circumstances and should have imposed penalties based on individualized assessments of each traffic-infraction defendant, and assures he will do so in the future.

Respondent also admits that during 2009, when he would give general advisements before each court session to traffic-infraction defendants about the State's burden of proof, which was a "preponderance of the evidence" standard, *see* Ind. Code § 34-28-5-1(d) (West Supp.

2009) (now codified at Ind. Code § 34-28-5-1(e)), he would explain that burden with statements such as, "The burden of proof is very slim," or that he "just sort of had to believe" the defendant committed the infraction. Such statements are inconsistent with Indiana law, and Respondent acknowledges that such statements were inconsistent with the Indiana Pattern Jury Instructions. He also acknowledges that he, instead, should have read the applicable pattern jury instruction to the litigants.

Finally, Respondent admits that on several occasions in 2009, when defendants were indecisive about whether to contest their infractions, Respondent would verbally speculate about what the State's evidence likely would be. Respondent acknowledges that he instead should have asked the prosecutor to give an opening statement about what the State's evidence likely would be, since it is the State that presents evidence and comments on the strength of its potential evidence, whereas the judge is supposed to maintain a posture of neutrality and not engage in a practice that conflates his role with that of the State.

We find that by routinely failing to consider the specific circumstances of the cases before him when imposing penalties on defendants, Respondent violated Code of Judicial Conduct Rules 1.1, 1.2, and 2.2 and committed conduct prejudicial to the administration of justice. We also find that, when viewed in light of the other behavior admitted in the Conditional Agreement, Respondent's practices of routinely giving general advisements to defendants that mischaracterized and understated the State's burden of proof, and of frequently speculating to indecisive defendants about what the State's evidence might be, constituted violations of Code of Judicial Conduct Rules 1.2, 2.2, and 2.6(B), as well as Rule 2.3(A), which requires a judge to "perform the duties of judicial office . . . without bias or prejudice," Jud. Cond. R. 2.3(A), and was conduct prejudicial to the administration of justice.

**<u>Agreed Sanction</u>**

The parties have agreed that the appropriate sanction for Respondent's misconduct is suspension without pay for thirty (30) days and the costs of this proceeding. In considering whether to accept the parties' proposed settlement, we note, as the Conditional Agreement demonstrates, that Respondent has never previously been disciplined, has cooperated with the Commission in its investigation and prosecution of this proceeding, has admitted to his conduct

and that most of it violated the Code of Judicial Conduct, and has made affirmative commitments to change his behavior. And, the fact that we are considering this matter following the parties' submission of a Conditional Agreement is entitled to some weight. In light of all the circumstances, we agree with the result proposed by the parties. As we have stated recently in other matters, "'A suspension from office without pay, regardless of duration, is not a minor sanction. Even more than a public reprimand, any such suspension is a significant blemish on a sitting judge's reputation.'" Matter of Koethe, 922 N.E.2d 613, 616 (Ind. 2010) (quoting Matter of Hawkins, 902 N.E.2d 231, 246 (Ind. 2009)).

Accordingly, Respondent, William E. Young, Judge of the Marion Superior Court, is hereby suspended from office without pay for a period of thirty (30) days, commencing on February 22, 2011. The suspension shall terminate and the judge shall automatically be reinstated to office at 12:01 a.m. on the thirty-first day thereafter.

This discipline terminates the disciplinary proceedings relating to the circumstances giving rise to this cause. The costs of this proceeding, if any, are assessed against the Respondent.

Dickson, Sullivan, Rucker, and David, J.J., concur.

Shepard, C.J., concurs in result with separate opinion.

6

**Shepard, Chief Justice, concurring in result.**

I would expect that in the absence of a settlement, this case should have resulted in a lengthier suspension. The per curiam understates the willfulness of the Respondent's conduct and the damage it has done to the public standing of the judiciary. Fortunately, the overwhelming number of Indiana's judicial officers strive demonstrably toward a much higher standard.

Still, as in other litigation settings, there is much to be said for the benefits of settlement, so I have joined in approving the agreement tendered by the parties.