

FILED

Jul 26 2023, 8:39 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert N. Reimondo
Capper Tulley & Reimondo
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mallory Stout,

*Appellant-Plaintiff*

v.

Tanner Knotts,

*Appellee-Defendant.*

July 26, 2023

Court of Appeals Case No.
22A-PL-1216

Appeal from the Putnam Circuit
Court

The Honorable Charles D. Bridges,
Special Judge

Trial Court Cause No.
67C01-2111-PL-584

**Opinion by Judge Pyle**

Judges Bradford and Kenworthy concur.

**Pyle, Judge.**

## Statement of the Case

[1]     Mallory Stout ("Stout") appeals the trial court's denial of her motion to correct
error. Through a convoluted series of procedural motions, the trial court

effectively granted Tanner Knotts' ("Knotts") motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). In addition, Stout claims that the trial court expressed actual bias against her case and erred by not recusing from this case. Concluding that the trial court erroneously denied Stout's motion to correct error and failed to recuse, we reverse the trial court's judgment, remand this case for further proceedings, and order the assignment of a new judge.

We reverse and remand.

## Issues

While Stout raised three issues, we address two that are dispositive:

1. Whether the trial court erroneously denied Stout's May 2, 2022 motion to correct error.

2. Whether the trial court improperly failed to grant Stout's motion to recuse.

## Facts

As alleged in Stout's complaint, the parties are unmarried, but chose to cohabitate. Stout selected a home in Roachdale, Indiana. The home was then purchased by Knotts for $69,900 and was titled in his name. In July 2019, the parties began to live together. During this time, the parties entered into a "joint venture" wherein they "used their own assets to make improvements and buy supplies and materials, increasing the value" of the home. (App. Vol. 2 at 9). In addition, Stout paid for the utilities, a "large portion of the renovations[,]" and assisted in completing the renovations. (App. Vol. 2, at 9). At some point

in July 2021, Knotts forced Stout to leave the residence, leaving behind personal property that was jointly purchased. Knotts subsequently sold the house for $149,000, and Stout had "no expected reimbursement from the sale of the house[.]" (App. Vol. 2 at 9).

[4] On November 11, 2021, Stout filed a complaint alleging that she and Knotts had an implied contract to cohabitate wherein she would contribute to the rehabilitation and maintenance of the home. Stout alleged that her removal from the house and Knotts' subsequent sale of the home without her being compensated for her contributions resulted in Knotts' unjust enrichment. In addition, Stout filed a temporary restraining order seeking to prevent Knotts from spending the money received from the sale of the home before this matter was resolved. The temporary restraining order was granted on November 12, 2021.

[5] On November 30, 2021, Knotts filed a request for an extension of time to respond and also filed a motion for change of judge. The motion for change of judge was granted and the Honorable Charles D. Bridges ("Judge Bridges") was selected and qualified to sit as special judge in this case.

[6] On December 10, 2021, Stout filed a motion requesting the trial court to order that the proceeds from the sale of the home be held by the Putnam County Clerk while this matter was pending. On December 12, 2021, Knotts filed a motion to dismiss pursuant to Trial Rule 12(B)(6). In his motion, Knotts asserted that Indiana did not recognize palimony, and, since the parties were

not married and the home was solely in Knotts' name, Stout had failed to state a claim upon which relief could be granted.[1] In addition, Knotts objected to the temporary restraining order and the transfer of the proceeds to the Putnam County Clerk.

[7] On December 15, 2021, before Stout filed any response, Judge Bridges granted Knotts' motion to dismiss. On December 21, 2021, Stout filed a motion to correct error. In her memorandum accompanying her motion, Stout argued that she had more than adequately stated a claim recognized under Indiana law. Citing *Bright v. Kuehl*, 650 N.E.2d 311, 314 (Ind. Ct. App. 1995), *reh'g denied* and *Neibert v. Perdomo*, 54 N.E.3d 1046 (Ind. Ct. App. 2016), Stout argued that Indiana recognizes a cause of action brought under implied contract and unjust enrichment where a cohabitant seeks relief based upon contributions made during the period of cohabitation.

[8] The next day, again before any response could be filed, Judge Bridges granted Stout's motion, which vacated the December 15, 2021 order dismissing Stout's complaint. On January 4, 2022, Stout filed a second motion requesting an order directing that the funds from the sale of the home be held by the Putnam County Clerk; this order was granted that same day.

---

[1] Palimony is a "term [having] meaning similar to 'alimony' except that award, settlement or agreement arises out of nonmarital relationship of parties." *Putz v. Allie*, 785 N.E.2d 577. 579 (Ind. Ct. App. 2003).

[9]     On January 19, 2022, Knotts filed his motion to correct error. Knotts argued that the trial court should not have granted Stout's motion to correct error before he had an opportunity to respond. Specifically, he asserted that Trial Rule 59(E) provides that parties opposing a motion to correct error have a period of fifteen days within which to file a response. In addition, Knotts argued that Stout did not follow the proper procedures for challenging the grant of a motion to dismiss. Contemporaneously, Knotts also filed a motion requesting that the trial court release the funds from the sale of the home to him.

[10]    On January 21, 2022, the trial court, before Stout could file a response, granted Knotts' motion to correct error. On January 26, 2022, Stout filed a response to Knotts' motion to correct error. Stout requested "that this Court deny [Knotts'] Motion for Relief of Proceeds, grant [Stout's] Motion to Correct Error, set aside the Order Granting [Knotts'] Motion to Dismiss, and for all other relief just and proper in the premises." (App. Vol. 2 at 42). In an order dated January 27, 2022, before Knotts filed any response, Judge Bridges issued an order. In his order, Judge Bridges, acknowledging that he had already granted Knotts' motion to correct error, gave Knotts "15 days from January 21, 2022 to file his response to [Stout's] Motion to Correct Errors." (App. Vol. 2 at 44). In addition, Judge Bridges denied Knotts' request to release the funds from the sale of the house to him.

[11]     Despite the procedural posture of this case, Judge Bridges held a telephonic pretrial conference on March 8, 2022. A trial date of September 22, 2022 was subsequently scheduled.

[12]     On March 17, 2022, Stout filed a motion requesting that Judge Bridges recuse himself. The contents of the motion read as follows:

> 1.     This matter was set for telephonic attorney conference on March 8, 2022.
>
> 2.     That during said telephonic conference this Court stated to counsel that its position is, regardless of what everyone else's position is in Indianapolis, that if [the parties] weren't married and [Stout] lived there and had the benefit of living there and now wants to claim what everyone calls "sweat equity" . . . bullsh*t. There is no sweat equity in this Court.
>
> 3.     When undersigned asked whether the Court would uphold the status of the law in Indiana regarding the equitable theory of unjust enrichment or implied contract, this Court stated, I never have . . . it does not sit well with me.
>
> 4.     That this Court elaborated and stated that it sees women do this all the time and it's horsesh*t.
>
> 5.     That an unjust bias and prejudice against [Stout] and/or her circumstances, as pled, exists and on that basis [Stout] is entitled to recusal of the Judge herein.

(App. Vol. 2 at 46). Judge Bridges took no action and failed to make any ruling on Stout's motion for recusal.

[13]     On March 17, 2022, Knotts filed a motion asking the trial court to vacate the trial date set in September. Knotts argued that when the trial court granted his motion to correct error on January 21, 2022, it effectively returned the

procedural posture of the case to the point when Stout's complaint had been dismissed. Knotts also acknowledged that he had yet to file an answer or counterclaim in this case. As a result, Knotts asserted that, with Stout's case being dismissed, a trial date was unnecessary. Stout subsequently filed an objection to Knotts' motion to vacate the trial setting.

On April 8, 2022, the trial court granted Knotts' motion and vacated the trial setting. In addition, the trial court found that Stout's complaint should be dismissed without prejudice. Knotts subsequently filed a motion for release of funds, which the trial court granted on April 13, 2022. Stout filed her motion to correct error on May 2, 2022, which the trial court denied.

Stout now appeals.

# Decision

## 1. Motion to Correct Error

Stout argues that the trial court erred in denying her motion to correct error. Specifically, she argues that her complaint adequately states a claim for relief under Indiana law. We agree.

We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. *Berg v. Berg*, 170 N.E.3d 224, 227 (Ind. 2021). "But, where a ruling turns on a question of law, our review is de novo." *Id.* A motion to dismiss for failing to state a claim under Trial Rule 12(B)(6) is reviewed de novo. *Residences at Ivy Quad v. Ivy Quad Development, LLC*, 179 N.E.3d 977, 981

(Ind. 2022). When considering the trial court's action, we take the facts alleged in the complaint as true, consider all allegations in the light most favorable to Stout, and draw every reasonable inference in her favor. *Id*. In essence, we must determine whether Stout has "stated some factual scenario in which a legally actionable injury has occurred." *Id*. (internal quotation marks and citation omitted). "If so, dismissal is improper." *Id*.

[18] In Indiana, we have determined "that a party who cohabitates with another without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as implied contract or unjust enrichment." *Bright*, 650 N.E.2d at 315.

> To recover for unjust enrichment, the plaintiff must show that (1) [she] rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) [she] expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. . . .
>
> Similarly, to recover under implied contract, the plaintiff generally must establish that the defendant impliedly or expressly requested the benefits conferred. Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value.

*Neibert*, 54 N.E.3d at 1051 (internal quotation marks and citations omitted).

[19] In this case, the allegations in Stout's complaint sound in implied contract and unjust enrichment. Stout has alleged in her complaint that she and Knotts decided to live together. She picked out the house. Knotts purchased the property and placed it in his name. Stout alleged that, between July 2019 and July 2021, she and Knotts entered into a "joint venture" wherein the parties

would contribute to the rehabilitation and renovation of the house. (App. Vol. 2 at 9). Stout stated that she paid for the utilities and contributed money and labor to the maintenance of the home and claimed that she was eventually forced to move out of the house. She alleged that she left behind personal property that was jointly purchased and that Knotts sold the house for a profit without compensating her for her contributions.

[20] Based upon these allegations, we hold that Stout has stated a claim upon which relief can be granted. We make no comment on whether Stout will produce sufficient evidence to be successful, but the allegations in her complaint are sufficient to warrant remand of this case for further proceedings.

## 2. Motion for Recusal

[21] Stout argues that the trial court also erred by failing to rule on her motion for recusal. Stout's motion is based on the statements Judge Bridges made during the telephonic pretrial conference that we have outlined above. Stout argues that recusal is required because Judge Bridges demonstrated his inability to be impartial. Knotts does not dispute the accuracy of the statements outlined in Stout's motion nor does he address the trial court's failure to rule on the motion. Instead, the crux of Knotts' argument is that a trial court's adverse ruling is not a basis for recusal.

[22] It is well settled that an impartial judge is an essential element of Due Process. *Chappey v. Storey*, 204 N.E.3d 932, 939 (Ind. Ct. App. 2023), *trans. denied*.

While we presume judicial officers to be unbiased, our supreme court has outlined the conduct expected of Indiana's judicial officers as follows:

> Indiana Judicial Conduct Canon 2 requires a judge to perform the duties of judicial office impartially, competently, and diligently. Judges must be objective and open-minded. A judge shall perform the duties of judicial office . . . without bias or prejudice. A judge shall be patient, dignified, and courteous to litigants. A judge *shall* disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned including in circumstances when the judge has a personal bias or prejudice concerning a party.

*Hollinsworth v. State*, 928 N.E.2d 201, 202 (Ind. 2010) (quotation marks and citations omitted) (emphasis added). Recusal is required if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality. *L.G. v. S.L.*, 88 N.E.3d 1069, 1071 (Ind. 2018).

[23] Here, Judge Bridges' statements, as outlined in Stout's recusal motion, fall woefully short of this standard. His statements go beyond merely expressing skepticism about Stout's claims in her complaint. Judge Bridges clearly expressed disdain, not only for the type of relief Stout was seeking, but for the gender he believed most often sought this type of relief. In addition, he indicated that he would not provide the relief being requested by Stout, regardless of whether the law allowed it or there was sufficient evidence to support the requested relief. *See Chappey*, 204 N.E.3d at 939 (holding that clear bias or prejudice exists where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy). As a result, we hold

that an objective person would have a rational basis for doubting Judge Bridges' impartiality.

[24] Because the record reveals that the trial court erred in dismissing Stout's complaint for failing to state a claim, the order denying Stout's motion to correct error is reversed and this case is remanded for further proceedings. Because the trial court's order releasing the funds from the sale of the home is inextricably linked to the erroneous dismissal of Stout's complaint, that order is also reversed. In addition, on remand, Stout is entitled to a new judge.

[25] Reversed and remanded with instructions.

Bradford, J., and Kenworthy, J., concur.