## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2017, 6:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clyde D. Lewis, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2017

Court of Appeals Case No.
31A04-1605-CR-1006

Appeal from the Harrison Superior
Court.
The Honorable Joseph J. Claypool,
Judge.
The Honorable H.L. Whitis, Senior
Judge.
Trial Court Cause No. 31D01-1512-
F5-795

**Friedlander, Senior Judge**

[1] Clyde D. Lewis, III, appeals his conviction of battery, a Level 5 felony.[1] We reverse and remand for a new trial.

[2] The State alleged that Lewis battered his five-year-old stepson X.R. by striking him repeatedly with a belt, leaving marks on his back and thighs. At the initial hearing, Lewis stated he wanted to represent himself and signed a form waiving his right to counsel. The trial court did not discuss the form with him. Lewis subsequently represented himself at several pretrial hearings. At the final pretrial hearing, the trial court on its own motion appointed counsel to advise him, stating that counsel could answer Lewis's questions but Lewis would otherwise represent himself. The court described counsel's role as "stand-by counsel." Tr. Vol. V., p. 4.

[3] On the day of trial, Lewis asked to be represented by counsel, telling the court, "I'm in over my head." Tr. Vol. VI, p. 6. The State objected to Lewis's request. The trial court denied Lewis's request and directed him to proceed pro se, with counsel available to provide advice. A jury determined Lewis was guilty as charged, and the court imposed a sentence. At sentencing, Lewis requested an attorney for an appeal. The court granted his request and this appeal followed.

---

[1] Ind. Code § 35-42-2-1 (2014).

[4]     Lewis raises three issues, which we restate as: (1) whether the trial court erred in determining Lewis validly waived his right to counsel; (2) whether the trial court abused its discretion in denying Lewis's request for counsel on the day of trial; and (3) whether the prosecutor engaged in fundamentally erroneous misconduct during trial. We need not address Lewis's third claim because his first and second claims are dispositive.

[5]     We start with the waiver of counsel. Lewis argues his waiver of his right to counsel was invalid and his conviction must be reversed. The State responds that the record establishes the trial court properly allowed Lewis to represent himself. We agree with Lewis.

[6]     The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he or she may be tried, convicted and punished. *Parish v. State*, 989 N.E.2d 831 (Ind. Ct. App. 2013). This protection also encompasses an affirmative right for a defendant to represent himself or herself in a criminal case. *Id.*

[7]     When a defendant asserts the right to self-representation, the court should tell the defendant of the "'dangers and disadvantages of self-representation.'" *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001) (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975)). There is no set formula or script the court must follow in advising the defendant, but the court must come to a "considered determination" that the defendant is making a voluntary, knowing, and intelligent waiver. *Id.* Specifically, the court must

determine the defendant's competency to represent himself or herself and establish a record of the waiver. *Bumbalough v. State*, 873 N.E.2d 1099 (Ind. Ct. App. 2007). Courts will indulge every reasonable presumption against waiver of the right to counsel. *Hawkins v. State*, 982 N.E.2d 997 (Ind. 2013).

[8] We review de novo a trial court's determination that the defendant validly waived the right to counsel. *Silvers v. State*, 945 N.E.2d 1274 (Ind. Ct. App. 2011). An appellate court reviewing the adequacy of a waiver must consider: (1) the extent of the trial court's inquiry into the defendant's decision, (2) other evidence in the record establishing whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the decision to proceed pro se. *Parish*, 989 N.E.2d 831.

[9] In this case, Lewis appeared at an initial hearing on December 23, 2015. Senior Judge H.L. Whitis presided. The judge informed Lewis he had a right to an attorney at no expense if he could not afford one, read the criminal charge to Lewis, and informed Lewis of the possible penalties he was facing. Lewis told the court he intended to represent himself, and the court responded, "You are? Which is normally not a good idea unless you've got a law degree or been a paralegal or something." Tr. Vol. II., p. 7.

[10] Next, the court presented Lewis with a waiver of attorney form and paused the proceedings to allow Lewis to review it. When the proceedings resumed, Lewis told the court he had read, understood, and signed the form. Lewis noted on

the form that he had completed school through the twelfth grade plus two years of college. He also indicated he had no prior criminal prosecutions. The form included the following advisements:

> 6. I understand that I have a right to be defended in this case by an attorney. I have the right to employ an attorney of my own choice to defend me. I know the judge would give me a continuance to save my money and hire an attorney. I also understand that if I cannot afford to hire an attorney, the Court will provide an attorney for me in this case at no expense to me. I further understand that I have a right to have an attorney provided by the Court even if I am found guilty of the offense charged.
>
> 7. I declare that no person has made any promise or suggestion of any kind to me or to anyone else that I would receive any favors, special treatment or any other form of leniency if I would decide not to have an attorney defend me in this case. I declare that this Waiver is made and signed by me freely and voluntarily.
>
> 8. I am aware of the following pitfalls, dangers, and disadvantages of representing myself:
>
> (a) A person untrained and uneducated and without any skill or experience in constitutional and criminal law and the procedural and evidentiary rules may not be able to adequately represent himself or herself;
>
> (b) A person untrained in and unfamiliar with the art of persuasion, negotiation, and the plea bargaining process in criminal cases may not be able to adequately represent himself or herself;
>
> (c) A person not possessing the skills of a lawyer may not be able to accurately assess the strengths and weaknesses of the case, the likelihood of the State succeeding at trial, or the legal validity of the charges against them;
>
> (d) An untrained person may lack the skill to adequately prepare a defense;

(e) An untrained person may lack the skill to accurately assess actual guilt of charges filed; and

(f) A person representing himself or herself will be held to the same standard as an attorney and will be responsible for making objections and arguments, following procedural and evidentiary rules, preparing his or her defense, and representing themselves at every step in the proceedings without any assistance.

Appellant's App. p. 13.

The form provided space for Lewis to explain his reasons for representing himself:

9. I am aware of the pitfalls, dangers, and disadvantages of representing myself and I want to represent myself for some of the following reasons (initial or check all that apply):

* * * *

__√__ (c) I want to get my case over with sooner to have the case finalized and eliminate the uncertainty and anxiety of a pending case.

* * * *

__√__ (f) I do not want to come back to court because I will have to miss work.

I believe and feel that I fully understand the proceedings in this case against me and I understand my right to be represented by an attorney.

I DECLARE THAT I DO NOT WANT TO BE DEFENDED BY AN ATTORNEY IN THIS CASE.

*Id.* at 14.

The court did not discuss the form with Lewis or any other issues related to waiver of the right to counsel. Instead, the parties and the court moved on to

other preliminary matters. Lewis declined to post bond, asserting he would remain in jail pending trial, contradicting his indication on the waiver form that he did not want to miss work.

[13] Next, Judge Joseph L. Claypool presided at a pretrial hearing on February 12, 2016. Judge Claypool presided over all subsequent pretrial hearings and the trial. At the February 12 hearing, Lewis stated he wanted to subpoena X.R. to testify at trial. The following exchange occurred during this discussion:

> THE COURT: And you're representing yourself as counsel so therefore, you're required to – to – Here's what – Here's what you're required. This is what is usually read to you when you go through these things. And Judge – Judge Whitis intimated these things to you when we went through. Okay? That you have to follow the rules of evidence and trial procedure. Okay. Do you understand that?
>
> MR. LEWIS: Yes, sir.
>
> THE COURT: Okay. Do you know what the rules of trial procedure are?
>
> MR. LEWIS: Vaguely.
>
> THE COURT: Vaguely. Okay. Well, the next thing is that you can't later claim that you had inadequate representation.
>
> MR. LEWIS: I'm not.
>
> THE COURT: Okay. And that – do you understand that the questions might open up any sorts of things otherwise that wouldn't come into the trial? And you understand that attorneys have certain skills that you don't have?
>
> MR. LEWIS: Yes, sir.

Tr. Vol. III, pp. 23-24.

[14]     At a February 22, 2016, pretrial conference, Lewis told Judge Claypool he was prepared for trial and still wanted to represent himself. The court and the parties discussed discovery issues. During the discussion, the court stated:

> Sir, sir, the Court is trying to give you as much leeway as possible since you're representing yourself, okay. Now we went through this several times about you're under the same obligations as an attorney would be if you're asking for document [sic] and so forth, and subpoenas or to get witnesses to come here and everything else.

Tr. Vol. IV, pp. 9-10.

[15]     Later in the hearing, the trial court again asked Lewis if he wanted to represent himself. Lewis responded "I have no choice. I have no choice in the matter." *Id.* at 11. He also said, "I'm already this far into it. I mean, what's the worst that could happen?" *Id.* The following discussion occurred:

> THE COURT: The worst that can happen to you – I'm gonna read this to you again. A Level 5 Felony, the penalty is 1 to 6 years in prison and up to a $10,000 fine. That's what can happen to you. Okay? That's a pretty stiff penalty. It's a non – You know, this isn't a – this isn't a Correct Misdemeanor where you're gonna spend 30 days in the Harrison County Jail. So, you know, the deal is is [sic] that, again, the Prosecutor and the Court here has been trying to do as much as we possibly can to make sure that you get – You know, that you understand what representing yourself means. Okay? That you want to represent yourself. You have an absolute constitutional right to do so. You know, your – your mental competency is something that was coming up to me. I mean, do you feel like you can understand what's going on here?
>
> [LEWIS]: Yes, sir.

*Id.* at 12-13. The court asked Lewis if he had ever been confined to a mental hospital or been diagnosed with a mental illness or emotional disability, and Lewis responded in the negative. The court further asked Lewis if he wanted the court to schedule a competency hearing, and Lewis said no.

[16] Next, during the final pretrial conference, which was held on February 24, 2016, the court stated it had contacted an attorney to serve as "stand-by counsel" if Lewis was agreeable. Tr. Vol. V, p. 4. The court asked Mr. Lewis, "You're still representing yourself; do you understand that?" *Id.* at 5. Lewis indicated that he understood.

[17] We must now consider the factors set forth in *Parish v. State* in the context of this record. First, as to the extent of the trial court's inquiry into the defendant's decision, neither of the judges talked with Lewis about his request to waive representation by counsel. At the preliminary hearing, Lewis merely signed a form, with no further discussion. At the next hearing, Judge Claypool indicated that certain advisements should have been read to Lewis, but no such reading occurred. Although a waiver form may eliminate the need for the trial court to question the defendant at length, caselaw requires some investigation into a defendant's motivation for waiving counsel. *See Castel v. State*, 876 N.E.2d 768 (Ind. Ct. App. 2007) (reversing conviction of defendant who represented herself at trial where the trial court made no inquiries into defendant's decision to proceed pro se). At subsequent pretrial hearings, the court indicated it would allow Lewis to proceed pro se but did not inquire into the circumstances of his decision, other than questioning him about his mental

state. Most troublingly, neither of the judges explicitly determined that Lewis had knowingly, voluntarily, and intelligently waived his right to counsel.

[18] Second, we consider whether there was other evidence in the record establishing whether Lewis understood the dangers and disadvantages of self-representation. At the initial hearing, Lewis signed a form that contained several detailed advisements about proceeding pro se. The form also indicated Lewis was aware of the dangers of self-representation and understood the proceedings, but no attempt was made to follow up on those general statements. Lewis was told at several pretrial hearings that he would be held to the same standard as an attorney, who may have skills that he did not possess.

[19] The third factor is the background and experience of the defendant. During the initial hearing, Lewis wrote on the form that he was a high school graduate who took some college classes, but he had no prior encounters with the justice system. At a later pretrial hearing, Lewis conceded he was only "vaguely" familiar with the rules of procedure. Tr. Vol. III, pp. 23-24. Further, during the February 22, 2016 pretrial conference, the trial court on its own initiative asked Lewis about his mental health in detail, asking several times whether he had ever been confined because he was a danger to himself or others.

[20] Finally, we look at the context of the decision to proceed pro se. If a defendant's decision to proceed without counsel appears tactical, then this factor weighs in favor of finding a knowing and intelligent waiver. *Drake v. State*, 895 N.E.2d 389 (Ind. Ct. App. 2008). At the initial hearing, Lewis

indicated on the form that he wanted to represent himself because he wanted to get the case "over with" and did not want to miss work. Appellant's App. p. 14. Intending to resolve the case as quickly as possible and return to normal life could be viewed as a logical consideration, but during the same hearing, Lewis undercut his own reasoning by refusing to pay a bond and choosing to remain incarcerated for the duration of the case. In addition, during the February 26, 2016 hearing, when asked if he wanted to continue to represent himself, Lewis said, "I have no choice. I have no choice in the matter." Tr. Vol. IV, p. 11. The trial court questioned Lewis about his mental state and mental health history shortly after that statement. These facts indicate that Lewis's decision to proceed pro se may not have been tactical.

[21] Weighing these factors as applied to the facts, we conclude Lewis's waiver of counsel was not knowing, voluntary, and intelligent. The written advisements of the dangers of proceeding pro se and the trial court's reminders that Lewis would be held to the same standard as an attorney are outweighed by the court's lack of an inquiry into Lewis's decision, Lewis's utter lack of experience in trial matters, and the context of his decision to proceed pro se. *See Parish*, 989 N.E.2d 831 (waiver of right to counsel was invalid considering the facts and circumstances, including a failure by the court to inquire into defendant's decision to proceed pro se).

[22]     In the alternative, we also conclude the trial court erred in denying Lewis's request for counsel on the day of trial.[2] The decision of whether to allow a defendant to reassert a right of counsel during trial is left to the discretion of the trial court, and we reverse only for abuse of discretion. *Koehler v. State*, 499 N.E.2d 196 (Ind. 1986). Relevant factors to consider include:

> (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and stage of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

*Id.* at 199 (quoting *People v. Elliott*, 70 Cal. App. 3d 984, 993-94, 139 Cal. Rptr. 205, 211 (1977)).

[23]     In this case, on the day of trial Lewis asked to be represented by counsel. The court denied Lewis's request for counsel, noting the jury pool had been assembled, X.R.'s mother indicated she may be moving out of the county and "may not be able to appear at a later date," and Lewis had been given prior opportunities to request representation by counsel. Tr. Vol. VI, pp. 16-17.

[24]     Turning to the factors noted in *Kohler*, Lewis did not have a history of substituting counsel or vacillating between representing himself or being

---

[2] The State claims Lewis's request for counsel was ambiguous or was, in substance, a request for inappropriate hybrid representation. Based on our review of the record, we conclude Lewis unambiguously asked to be represented by counsel on the day of trial.

represented by counsel. He instead represented himself from the initial hearing until the day of trial, at which point, upon being finally confronted with the difficulties he faced, he requested counsel.

[25] Lewis's reason for requesting counsel - that he was not capable of adequately defending himself because he did not understand court procedures - appears to be legitimate. *See Kohler*, 499 N.E.2d 196 (inability to understand habitual offender proceedings was legitimate reason for requesting counsel during trial). Lewis told the court, "I'm in over my head" and "It's not a good idea for me [to represent myself.]" Tr. Vol. VI, p. 6. The trial had not yet begun, although the jury pool had been assembled.

[26] As for disruption and delay, the prosecutor and the trial court told Lewis that the attorney that the court had arranged to advise Lewis could not represent him at trial that day because she was not one of the county's public defenders. Instead, a different attorney would have to be appointed to represent him. Thus, granting Lewis's request for counsel would have resulted in delay, but two counterpoints are clear from the record. First, it appears the trial court did not tell Lewis until the day of trial that his attorney was not a true standby counsel; that is, she would not be able to represent him at trial if needed. It is unclear why the trial court did not ask one of the public defenders to serve as standby counsel, who could, in theory, have proceeded on the day of trial. Second, Lewis informed the court that if it was necessary to appoint a different attorney, he would waive his right to a speedy trial and agree to delay the trial.

[27] The final factor discussed in *Kohler* is the likelihood of the defendant's effectiveness at trial if required to continue to represent himself. The record reflects that when Lewis made his request for counsel, he demonstrated an utter lack of knowledge of procedural rules. Although he had previously asked for information on subpoenaing witnesses, he did not understand that he would have to seek evidence from third parties such as the Department of Child Services and X.R.'s doctors on his own. Further, when the trial court moved up the trial date to preserve Lewis's right to a speedy trial, Lewis appeared not to understand that the trial would be held within the speedy trial period and indicated he might file a motion to dismiss. He conceded he was "vaguely" familiar with the rules of trial procedure. Tr. Vol. III, pp. 23-24. It was clear that he would have had difficulty presenting an effective defense at trial.

[28] Based on these factors, the trial court abused its discretion in denying Lewis's request for counsel on the day of trial. *See Dowell v. State*, 557 N.E.2d 1063, 1067-68 (Ind. Ct. App. 1990) (trial court abused discretion in summarily denying defendant's request for standby counsel to take over during trial; defendant had done a poor job representing himself and standby counsel "may" have been ready to step in), *trans. denied*.

[29] For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial.

[30] Judgment reversed and remanded.

Vaidik, C.J., concurs in result without opinion.

Kirsch, J., concurs.